Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
(212) 643-0500
*mreese@reesellp.com*

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Pablo Lopez, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>- against -<br><br>Blue Diamond Growers,<br>Defendant. | Case No. 26-cv-7342<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Pablo Lopez ("Plaintiff") through his undersigned Counsel alleges upon information and belief except for allegations about Plaintiff which are based on personal knowledge and/or other allegations based on investigation and/or knowledge of Counsel:

1. For millennia, a smokehouse has been "a building or place in which meat, fish, etc., are cured with smoke," and/or "[A] structure used to smoke food to preserve it and to add flavor," by moving air to apply smoke and heat, generated from burning hardwoods.

**TRADITIONAL**




**MODERN**




2. To appeal to consumers seeking foods made with true wood smoke Blue Diamond Growers ("Defendant") sells and/or sold "Smokehouse Almonds," "Smokehouse" emblazoned across a streaking red ribbon with glowing orange borders, evocative of fire surrounded by what appear to be smoked almonds coated lightly in salt in tins, packages, pouches and other forms in numerous sizes ("Product").




3. The Product is "misbranded"[1] because despite "Smokehouse Almonds," and the absence of any other statements with respect to the source of the almonds' smoked taste (e.g. NATURALLY FLAVORED) the ingredients in fine print on the back reveal the smoky taste is not from wood smoke but a mix of laboratory chemicals called "Natural Hickory Smoke Flavor." AGM § 201(1), *compare with*, 21 U.S.C. § 343(a).

[1] "Misbranded" and "adulterated" are statutory terms with the former applying to labeling that is false and/or misleading and the latter meaning to render something poorer in quality by adding another substance, typically an inferior one.




4. Purchasers will expect the almonds' taste to come from a smokehouse, defined by dictionaries as "a building or place in which meat, fish, etc., are cured with smoke" and "[A] structure used to smoke food to preserve it and to add flavor" through the burning of hardwoods.

5. That the almonds' smoked taste is not from any wood smoke is confirmed by investigation into Blue Diamond's almond processing operations.

6. Based on publicly available information, Blue Diamond's main facilities in Sacramento, Salida and Turlock reveal no evidence of any smoking apparatuses, such as environmental approval authorizations or other indicia.




Turlock




7. And while their internal operations are kept secret from the public, available photographic evidence appears to confirm the absence of any smoke chambers or even exhaust system to manage real wood smoke.

No Smoke Chamber



No Smoke Chamber



No Smoke Chamber



No Smoke Chamber



8. Under any name, i.e., liquid smoke, natural hickory smoke flavor and pyroligneous acid are emblematic of the type of additives that according to the International Food Information Council ("IFIC"), almost thirty percent of Americans

consider a top concern.[2]




9. This is because "research has shown [these types of additives] are either bad for people to consume or inconclusively so."[3]

10. And the European Food Safety Authority ("EFSA") recently concluded that "unlike traditional smoking methods" "Smoke flavors are related to the risk of genotoxicity."[4]

11. These smoke flavorings "are produced through a wood combustion process called 'pyrolysis' [] That is, through the fractionation and purification of a condensed smoke producing primary smoke condensates, primary tar fractions

---

[2] Tom Neltner, Environmental Defense Fund, Chemicals Policy Director, Chemicals in food continue to be a top food safety concern among consumers, Food Navigator, Sept. 20, 2021.

[3] Cary Funk et al., Public Perspectives on Food Risks, Pew Research Center, Nov. 19, 2018.

[4] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010.

and/or derived smoke flavorings."[5]

12. The EFSA found that the "liquid smoke" (produced by removing harmful elements from smoke such as ash and tar) had toxic properties that could increase the risk of developing numerous conditions including cancer.

13. For these reasons, Jonathan Brown, known as "JB," founder of industry leader Smoke Shack Snacks, described how "An[] advantage of natural smoking is that it can be a healthier option, as it often involves using natural materials and avoids the potential health risks associated with artificial additives."[6]

14. Beyond health concerns associated with synthesized smoke additives, smoke flavoring made in a laboratory lacks the natural balance of phenolic compounds such as 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol that are generated from the burning of true hardwoods.

15. The Product is "misbranded" because Smokehouse Almonds is a misleading name for almonds not exposed to any wood smoke. AGM § 201(9) and 21 U.S.C. § 343(i).

16. Identical state and federal regulations required that "Smokehouse" "be

[5] Food Times, Genotoxic smoke flavourings, the EFSA opinion, Marta Strinati, November 16, 2023.

[6] Why is Natural Smoking Better Than Smoke Flavoring?, Smoke Shack Snacks.

immediately preceded by the word ‘natural’ and [] immediately followed by the word ‘flavored,’” like “Natural Smokehouse Flavored Almonds,” or “Smokehouse Flavored Almonds.”

17. That “smoke ingredients are added flavors [and] should be declared in accordance with 21 C.F.R. § 101.22 [on the front of the label],” was confirmed by the Food and Drug Administration when it warned companies about this issue.[7]

18. The FDA concluded that representing foods as smoked over hardwoods when “true smoke is absorbed in a liquid or other medium, and that medium is added to a food to provide a smoke flavor,” was misleading to consumers.

19. Almonds with a smoked taste entirely from liquid smoke are sold by Signature Select and Planters, with their smoked tastes attributed to how they are “Hickory Smoke Flavored” and “Naturally Flavored” as opposed to true wood smoke, which need not be “added.”

20. Only recently has Defendant attempted to correct its improperly labelled Products by adding the words NATURALLY FLAVORED to the front of the packaging. However, Defendant’s improperly labeled Products continue to be sold at the same time, as is reflected in the picture below taken at a CVS store on November 10, 2026:

---

[7] FDA, Warning Letter, Smoked Seafood, Inc. d/b/a Little Mermaid Smokehouse, MARCS-CMS 515739, June 27, 2017; FDA, Warning Letter, Walnut Creek Kitchens, Inc., CIN-15-436857-08, Nov. 27, 2014.




**<u>Picture taken at CVS store on November 10, 2026</u>**

21. In comparison, companies selling almonds that get their smoke taste from true wood smoke include Crimson Cove and Papa's Best Batch.







22. That purchasers can obtain true smoked almonds is unsurprising given their ease of preparation.

23. This involves (1) applying a brine solution of warm salt water to raw almonds and (2) placing them in a smokehouse structure.

24. When completed, the thin salt coating is a sign the almonds were subjected to true smoking.

25. As a result of the unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce the Product is sold at an elevated or higher price. Specifically, Plaintiff's expert, economist Dr. William Ingersoll, has determined through his expert analysis that the price for the Products are inflated by 12% due to the misconduct and mislabeling of the Products described in this Complaint

## JURISDICTION

26. Plaintiff Lopez is a citizen of New York.

27. Plaintiff Lopez is a resident of Richmond County, New York.

28. Defendant is a citizen of California because it is a California corporation headquartered in Sacramento, California.

29. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

30. The total number of units sold in New York bearing the statement Smokehouse Almonds without the Naturally Flavored disclaimer can be multiplied by the statutory damages available to Plaintiff and the proposed class.

31. This aggregate amount in controversy exceeds $5 million exclusive of interest and costs.

32. The Court has jurisdiction over Defendant because it transacts business within New York and/or sells and/or or sold the Product to consumers within New York to citizens of New York.

## VENUE

33. Venue is in this Court because the residence of Plaintiff Lopez is in Richmond County.

## PARTIES

34. [Keywords] a consumer, not merchant, business, re-seller or competitor.

35. [Keywords] a citizen of New York.

36. [Keywords] a resident of Richmond County, New York.

37. Defendant Blue Diamond Growers is a California cooperative corporation with a principal place of business in California.

38. Based on "Smokehouse Almonds," and the absence of any other statements with respect to the source of the almonds' smoked taste (e.g. NATURALLY FLAVORED) consumers like and/or including Plaintiff expected, would expect and/or were caused to pay more money for the Product, expecting (i) the smoked taste was from the almonds being smoked over hardwoods and/or (ii) the smoked taste was not from added substances, such as "smoke flavor".

39. Based on the deceptive acts or practices in the conduct of business, trade or commerce and/or the false advertising in the conduct of any business, trade or commerce "Smokehouse Almonds," and the absence of any other statements with respect to the source of the almonds' smoked taste (e.g. NATURALLY FLAVORED) Defendant is and/or was able to and can and/or could charge a higher price (approximately 12% according to Plaintiff's expert economist Dr. William Ingersoll) for the Product to consumers like and/or including Plaintiff, who then pay and/or paid more money for the Product than they otherwise would have paid.

40. Plaintiff read, was exposed to, was aware of, relied on and/or was caused to pay more money as a result of the unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce including "Smokehouse Almonds," and the absence of any other statements with respect to the source of the almonds' smoked taste (e.g. NATURALLY FLAVORED).

41. Plaintiff was caused to pay approximately 12% more money as a result of the unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce "Smokehouse Almonds," and the absence of any other statements with respect to the source of the almonds' smoked taste (e.g. NATURALLY FLAVORED) than would have been paid in the absence of the unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce.

42. The unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce "Smokehouse Almonds," and the absence of any other statements with respect to the source of the almonds' smoked taste (e.g. NATURALLY FLAVORED) enabled Defendant to charge Plaintiff a 12% higher price for the Product than it could otherwise charge in the absence of the unfair,

deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce.

43. Plaintiff bought the Product identified here at or around the above-referenced price.

44. Plaintiff purchased and/or paid money towards the Product within three years of the filing of the operative Complaint.

45. Plaintiff purchased and/or paid money towards the Product at relevant stores that sell the Product in New York.

46. Plaintiff used, consumed, disposed of in the expected manner, exhausted and/or applied the Product in New York.

47. Plaintiff relied on the absence of unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce identified here in purchasing the Product.

48. Plaintiff was injured by reason of Defendant's violations of GBL §§ 349 and/or 350, unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce "Smokehouse Almonds," and the absence of any other statements with respect to the source of the almonds' smoked taste (e.g.

NATURALLY FLAVORED) because these unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce enabled Defendant to charge an artificially inflated and/or higher price for the Product which Plaintiff paid and/or paid money towards.

49. Plaintiff was caused to pay more for the Product than Plaintiff would have paid in the absence of the unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce had it been disclosed that (i) the smoked taste was not from being smoked over hardwoods and/or (ii) the smoked taste was entirely from added substances, such as "smoke flavor" as Plaintiff would have been able to pay less because Defendant would not be able to charge as much.

50. The Product was not "worthless" to Plaintiff but worth less than what Plaintiff paid and/or Plaintiff would not have paid as much absent the unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and/or false advertising in the conduct of any business, trade or commerce.

## CLASS ALLEGATIONS

51. Plaintiff seeks to represent other consumers not merchants, re-sellers, competitors or any form of business entity including non-profit organizations in the

class identified below, against a business:

> All persons who purchased the Product in any variety, size, form, etc. for personal, familial and/or household consumption, application and/or use in New York from November 13, 2023 to present.

52. Excluded from the Class are or would be (i) Defendant, Defendant's board members, executive-level officers, members, attorneys and immediate family, (ii) governmental entities, (iii) the Court, the Court's immediate family and Court staff and (iv) persons that timely and properly exclude himself, herself or themselves, from the Class.

53. Common questions of issues, law and fact do and/or would predominate and include whether Defendant's acts in the conduct of trade or commerce and/or advertising in the conduct of any business, trade or commerce were deceptive and/or false and/or if Plaintiff and class members are and/or would be entitled to damages.

54. Plaintiff's claims and/or basis for relief are and/or would be typical to other members because all were subjected to and/or impacted by the same deceptive acts in the conduct of trade or commerce and/or false advertising in the conduct of any business, trade or commerce.

55. Plaintiff is an adequate representative because Plaintiff's interests would not and/or do not conflict with other members.

56. No individual inquiry is or would be necessary, since the focus is or

would be only on Defendant's acts in the conduct of trade or commerce and/or advertising in the conduct of any business, trade or commerce and the class is definable and ascertainable.

57. Individual actions could and/or would risk inconsistent results, be repetitive and/or are, could or would be impractical to justify as the claims are and/or would be modest relative to the scope of the harm.

58. The class is or would be sufficiently numerous because the Product is and/or has been sold throughout the State to citizens of this State.

59. Plaintiff's Counsel is competent and experienced in consumer actions and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
General Business Law ("GBL") §§ 349 and 350

60. To the extent required this section incorporates by reference other paragraphs as necessary.

61. Plaintiff's claims are based upon General Business Law ("GBL") §§ 349 and 350, passed by the Legislature to protect unsophisticated New York consumers against businesses.

62. The GBL prohibits unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and false advertising in the conduct of any business, trade or commerce.

63. The unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and false advertising in the conduct of any business, trade or commerce violated the GBL based on "Smokehouse Almonds," and the absence of any other statements with respect to the source of the almonds' smoked taste (e.g. NATURALLY FLAVORED) causing purchasers including Plaintiff to expect (i) the smoked taste was from the almonds being smoked over hardwoods and/or (ii) the smoked taste was not from added substances, such as "smoke flavor".

64. The unfair, deceptive or abusive acts or practices in the conduct of any business, trade or commerce and false advertising in the conduct of any business, trade or commerce included "Smokehouse Almonds," and the absence of any other

statements with respect to the source of the almonds' smoked taste (e.g. NATURALLY FLAVORED) which was contrary to statutes and/or regulations which prohibit unfair, deceptive or abusive acts or practices in the conduct of any business, trade or commerce and false advertising in the conduct of any business, trade or commerce.

65. Plaintiff seeks to recover for economic injury and/or loss sustained based on and caused by the unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and false advertising in the conduct of any business, trade or commerce.

66. The unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce and false advertising in the conduct of any business, trade or commerce can be reduced to a monetary value of approximately 12% of the purchase price accordingly to analysis by Plaintiff's expert economist Dr. William Ingersoll. In other words. Plaintiff and the other proposed class members overpaid by 12% due to the mislabeling and misconduct alleged herein.

67. Plaintiff and the other class members are entitled to the greater of actual damages or $550 per unit sold in statutory damages available under GBL §§ 349 and 350.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

Wherefore, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as Counsel for the class;

2. Awarding monetary damages, statutory damages, punitive damages and/or interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

November 13, 2026

Respectfully submitted,

**REESE LLP**

/s/ Michael Reese

Michael Reese
100 W 93rd Street, 16th Floor
New York, New York 10025
(212) 643-0500
*mreese@reesellp.com*

**REESE LLP**
Charles D. Moore
121 N. Washington Ave., 2nd Floor
Minneapolis, Minnesota 55401
Tel: (212) 643-0500
*cmoore@reesellp.com*

*Counsel for Plaintiff*
*and the Proposed New York Class*